## No. 2369.—Victor Morano v. Alfred Shaw et al.

The vendee of a purchaser at sheriff sale, though expressly subrogated to all the rights and privileges acquired by his vendor under the sheriff sale, has no right of action against the recorder of mortgages for having given an imperfect and erroneous certificate, whereby his vendor was induced to purchase property charged with incumbrances not made known at the time of the sale. The action for damages against the recorder for omitting to give a full and complete certificate of the incumbrances on the property to be sold is a personal one, and can, therefore, only be exercised by the purchaser at sheriff sale.

APPEAL from the Fourth District Court, parish of Orleans. *Théard*, J. *St. M. Berault* and *A. & P. J. Robert*, for plaintiff and appellant. *Clarke, Bayne & Renshaw* and *E. Bermudez*, for defendants and appellants.

This case was tried by a jury in the court below.

Taliaferro, J. The object of this suit is to render a recorder of mortgages liable in damages for having furnished a mortgage certificate by which the sheriff of the parish of Orleans sold under execution certain lots of ground as being free from all liens and incumbrances whatever, when in fact there existed a mortgage for a large sum against the property, which mortgage was, subsequent to the plaintiff becoming the owner of the lots sold at sheriff sale, enforced against them, to his great detriment and injury. The plaintiff joins in this action his vendor, Daniel Martin, who was the purchaser of the property at the sheriff's sale, and who sold it to the plaintiff with full warranty in all respects. Martin answered, averring that in an injunction suit instituted by the plaintiff against the party enforcing the mortgage complained of, the plaintiff had the means of defeating it, but failing to do so and abandoning the injunction proceeding, he lost all recourse upon him in warranty.

The defendant, Shaw, pleads the prescription of one, three and five years; that the plaintiff has no right of action against him; and avers that the plaintiff has entered into a fraudulent combination with others to extort from him a large sum under the pretext of damages that, had the plaintiff given him reasonable notice of the proceedings taken against the property purchased as alleged by the plaintiff, and which was sold under an older mortgage, not specified in the certificate of mortgage, he could have pointed out available defenses which the plaintiff might have resorted to and protected himself.

The cause was tried before a jury, which rendered a verdict against the defendant, Shaw, for the sum of $4500. From the judgment thus rendered he appealed. From that part of the judgment releasing Martin, the plaintiff appealed.

The facts of the case are that the city of New Orleans, in its administration of the McDonogh school fund, sold to one Gubernator four

lots of ground in a specified locality in the city, the lots being desig-
nated by the numbers one, two, three and six. The sale was made on
a credit; notes were given, and a special mortgage upon the property
retained. Subsequently White, a paver, having a claim amounting to
several hundred dollars against Gubernator for paving in front of some
of these lots, brought suit against him, claiming a privilege upon the
lots. He had judgment for the amount he claimed, with recognition
of privilege. The lots were offered for sale under execution, and two
of them, lots one and six, were sold, Daniel Martin being the pur-
chaser. It was at this sale that the property was declared to be free
of incumbrances, the recorder of mortgages having omitted to name in
his certificate the mortgage in favor .of the city of New Orleans given
by Gubernator to secure the payment of the price of the property.
Martin sold these lots to Morano, the plaintiff, with full warranty
against all incumbrances, a mortgage certificate being appended to the
act of sale, and therein recited that the property was unincumbered.
Afterwards the city sued Gubernator on his notes for the price of these
lots, and under a judgment against him recognizing the mortgage
claimed, the lots were seized by the sheriff and advertised for sale.
The plaintiff in this suit, Morano, took out an injunction to prevent
the sale, alleging ownership, and praying damages for the seizure. The
injunction was dissolved, with twenty per cent. damages. The plain-
tiff in injunction applied for and obtained an order granting an appeal,
but the appeal was abandoned. The claim of the city against Guber-
nator, it seems, was settled, and the property was not sold under
execution. The sheriff's return on the execution recites that the debt
was paid by Gubernator and that the writ was finally returned twenty-
ninth August, 1867. Still, an alias *fieri facias* was issued on the eighth
of February, 1868, and lots numbered two, three and six were again
seized and were advertised for sale on the twenty-eighth of March,
1868, although it appears no sale was made. Pending this advertise-
ment, Shaw, the defendant, wrote, under date of March 23, 1868, to
both Daniel Martin and Morano, five days before the time fixed for the
sale, suggesting available defenses that might be resorted to by them.
It is shown that certified copies of these letters were served respectively
on Daniel Martin and Morano the same day they were dated.

It appears by a notarial act dated seventh of May, 1867, that Gerard
Stith, President of the Board of Commissioners of the McDonogh
school fund, in consideration of the sum of $3943 received from Francis
Martin, assigned to him all the right, title and interest of the said
commissioners in and to the judgment obtained by the city of New
Orleans for the use of the McDonogh school fund against Gubernator,
and subrogated him to all their rights in the said judgment and the
notes upon which the judgment was predicated.

In this state of affairs Morano says that, being desirous of retaining the property he had purchased and improved, he entered into an agreement with Francis Martin and Gubernator, the parties interested, by which he retained the corner lot by paying one thousand dollars, the estimated value of the lot without the improvements he had made upon it; the other lot, valued at six hundred dollars, to be sold under the execution; that he moreover obligated himself to pay the damages awarded against him in the injunction suit and all costs, and that having paid in all $2250, he was quieted in his possession of the property. To this sum he adds " damages suffered from privation of the property, loss, trouble, etc., $2250," footing up his entire demand at the sum of $4500.

Morano bought the two lots from Daniel Martin on the third of September, 1866, and gave, as recited in the deed, $1200 for them. The suit of the city for the use of the McDonogh school fund against J. L. Gubernator was filed on the twenty-eighth of February, 1865, judgment rendered on the twenty-eighth of February, 1866, execution issued February 1, 1867, and returned satisfied August 29, 1867.

The date of the assignment by Stith to Francis Martin bears date of May 7, 1867. This shows that although the execution was not returned satisfied until the twenty-ninth of August of that year, the debt due by Gubernator to the McDonogh school fund had been paid several months before, and that this payment had been made before the termination of the plaintiff's injunction suit to stop the sale of the two lots he purchased from Daniel Martin. By the payment of the debt by Gubernator who owed it, the mortgage was extinguished. This fact, it seems clear, Morano might have shown in the injunction suit. He was then no longer in danger of being injured by this mortgage, which the city had been seeking to enforce. But it is held that the mortgage was transferred, and all the rights the city held under it passed to Francis Martin, who stood subrogated to them. On the other hand it is contended, and we think successfully, that there was no subrogation to Francis Martin. It seems clear that Stith was without authority to make it. The payment was not made by a third party, but by Gubernator, who paid $2511 58 to the sheriff. Stith, in his testimony, says "no money came into my hands under this document," meaning the act of subrogation. He acted under an order of the board in passing the act, and does not know whether any money was received or not; that no money got into his hands personally for anything. He could not recollect whether Francis Martin was present at the time, nor whether Martin spoke to him on the subject. It is shown that an application had been made previously to the city attorney by Gubernator to have the subrogation made to a third party, whose name was not remembered, but the city attorney refused to

comply. The conditions necessary to constitute subrogation are wanting in this case. Civil Code, 2155, 2156.

The facts shown by the defendants do not, in our opinion, enable them to sustain their plea of prescription. Civil Code, 3537, 3502. The act of omission by the recorder of mortgages which is complained of, if it give rise to an action at all, it is a personal action, and not in the character of a real action which follows the property. There is no liability on this defendant in the nature of warranty. There is no privity between him and Morano. See the case of Smith v. Moore, 9 Rob. 65. If liable on account of the omission complained of, the recorder would only be answerable in a personal action to the person purchasing the property.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed as to the decree rendered against Alfred Shaw, and affirmed as to that in favor of the other defendant, Daniel Martin, the plaintiff and appellee paying costs in both courts.

Rehearing refused.