HIGGINS MANUFACTURING CO., Appellant, v. SAM STONE & SONS, ET AL.

(June 7, 1926. Opinion and Decree.)
(July 5, 1926. Rehearing Refused.)
(Oct. 5, 1926. Writs of Certiorari and Review Denied by Supreme Court.

*(Syllabus by the Court.)*

1. Louisiana Digest—Builders and Buildings—Par. 9; Obligations—Par. 104.
Where plaintiff agrees to screen "five cottages at West End" and he supplies

screen doors of such thickness as are appropriate to the "rabbets" or grooves fixed for the accommodation of the screen doors by the builder of the cottages, he will be held to have complied with his contract. Plaintiff is under no obligation to criticise the "rabbets" as too small and insist upon their being made larger in order that a larger screen door may be installed as a better door for the purpose.

Appeal from Civil District Court, Division "A". Hon. H. C. Cage, Judge.

Action by Higgins Manufacturing Co. against Sam Stone and Sons et als.

There was judgment for defendants and plaintiff appealed.

Judgment reversed.

Milling, Godchaux, Saal & Milling; E. D. Saunders, of New Orleans, attorneys for plaintiff, appellant.

E. M. Robber, J. J. Reilley, H. G. Buckley, P. M. Milner, Hey Mooney, John C. Foster, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. Plaintiff, a Kentucky corporation, brings this suit against Henry G. Bulkley, a resident of Cleveland, Ohio, whom we shall hereafter call the "owner"; Sam Stone and Son a partnership doing business in the City of New Orleans, and composed of Sam Stone, Jr. and John Stone, hereinafter referred to as "contractor" and the Globe Indemnity Company of New York, hereinafter called "surety" in solido for the sum of $426.69.

The petition alleges that sometime prior to December, 1917, the owner entered into a contract with the contractor to erect a number of buildings on the West End road near Metairie Cemetery; that the surety executed a bond in conformity with the provisions of Act 262 of 1916, to protect the owner, contractors and workmen

engaged in the construction of the houses contracted to be built; that petitioner entered into an agreement with the contractor to screen the buildings for the sum of $426.69; that the screens were furnished and installed in accordance with the agreement, but payment was refused; that the contract and bond were not recorded as required by law and that consequently the owner is responsible to petitioner.

An attachment is asked for against the owner upon the ground of non-residence.

The owner answered, admitting the contract and bond, but claimed that both were properly recorded and denied liability. The contractor and surety in a joint answer admitted that the screens were bought for account of the owner but say they were rejected by the owner as not complying with the agreement covering the purchase of screens.

There was judgment rejecting plaintiff's demand, and plaintiff has appealed.

On the trial of the case it was admitted that the contract between Bulkley and Stone and Sons was for more than $500.00; that it was reduced to writing and a bond as described in the petition given by the Globe Indemnity Company and that neither the bond nor contract were recorded in the Mortgage Office as required by Act 262 of 1916.

Plaintiff's contract was in the form of a proposal and acceptance as follows:

"Dec. 8th, 1917.

"Messrs. Sam Stone, Sr. and Co.,
"New Orleans, La.
"Gentlemen:

"I beg to submit the following estimate for screening the five cottages at West End.

"I will furnish and install complete the following screens: 90 sliding screens for double hung windows, with cypress frames, mortised and tenoned, with 16 mesh galvanized netting, black enameled, attached to frames with flush mouldings and finished to correspond with surrounding woodwork. These screens will be on guides extending the full length of opening, so that screen may be used either at top or bottom of sash. Each screen to be equipped with brass shoe springs and 3 bronze loop lifts.

"I will also furnish 45 screens for double, casement windows, each pair of screens to be hung on loose pin hinges and furnished with brass spring fasteners. Same construction and netting as for the double hung window screens.

"I will also furnish double screens for the 18 doors, same construction as casement screens and with brass latches. Finished to correspond with surrounding woodwork.

"Also one single door, of same construction as the double doors.

"Also includes all openings in the five cottages, installed complete in a workmanlike manner, for the sum of four hundred and twenty-six and 69-100 dollars.

"Terms of payment 50 per cent upon installation and balance in thirty days thereafter.

"If desired, the casement windows can be fitted with double sliding screens instead of hinged screens, at the same price.

"Very truly yours,
"The Higgin Manufacturing Co.,
"By Edwin Hazard,
"Sales Agt.

"Accepted Dec. 19th, 1917.
"Sam'l Stone and Son,
"By Jno. O. Stone."

The first contention made by defendant was that the screens were not "galvanized netting, black enameled" as provided in the contract. The evidence is to the contrary, as was held by the trial court in his reasons for judgment, though the learned judge found against plaintiff upon another point.

The next contention, the one which prevailed with the court, a qua, was that plaintiff should have supplied screen doors of a thickness of 1⅛ inches instead of ⅞ of an inch as was done. It will be observed that no dimensions are given in the contract, but, it is argued, that in that situation, the custom of the trade controls, and there is considerable testimony in the record to the effect that, in the local market, when screen doors are ordered without any mention of thickness that it is customary to supply a door of the thickness of 1⅛ inches. There is also testimony to the effect ⅞ of an inch is too thin for screen doors because with that thickness there is a tendency to warp. However, it is also proven that screen doors of ⅞ of an inch are sometimes used and one dealer testified that he carries doors of that size in stock and sells quantities of them. This fact was recognized by the judge a quo, who was of opinion that the evidence established that a door of the thickness of ⅞ of an inch represented the worst door that could be tendered on a contract for screen doors, without specification of thickness, and that a door of 1⅜ inches represented the best, and upon the authority of Art. 2156 R. C. C., he held that plaintiff had not complied with his agreement. The article referred to reads as follows:

"If the debt be of a thing which is determined only by its species, the debtor, in order to discharge, is not bound to deliver it of the best kind, but he cannot tender it of the worst." Strahorn-Hutton-Evans Commission Co. vs. Red River Oil Co., 104 La. 675, 29 South. 265; American Brewing Co. vs. Artigues, 147 La. 155, 84 South. 571; Victor Morano vs. Alfred Shaw et al., 23 La. Ann. 379; 12 Ct. App. 351.

We would be in complete accord with this finding, were it not for the fact the contract we are considering does not, in our opinion, call for the delivery of "a thing determined only by its species". Such would be the case, if plaintiff had undertaken to sell a number of screen doors and in that event evidence of custom and understanding of the trade as to what was meant by a "screen door" when no dimensions were given would be pertinent as giving light upon ambiguous stipulations in the agreement.

R. C. C. 1954: "Usage. Whatever is ambiguous is determined according to the usage of the country where the contract is made."

But this contract is clear, and must be considered in relation to R. C. C. 1963:

"Clear Intent Not Modified By Equity, Usage or Law. When the intent of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision, which the parties had no rights to modify or renounce."

The plaintiff agreed to screen "the five cottages at West End", and not to supply a number of screen doors and windows of a certain length and width with the third dimension unspecified.

The record shows that when called upon to install the screens in the five cottages the grooves on the doors for the accommodation of the screens were from one inch to one inch and one-sixteenth in width. This arrangement, we are advised is called the "rabbet". The rabbets, therefore, were in no instance wider than 1-1/16 inches. There is no dispute in the testimony that the "rabbet" must be wider than the screen door consequently the screens could not be 1⅛ inches thick, for they would then extend beyond the "rabbet", and all witnesses are agreed that this would not do. Consequently in screening "the five cottages at West End" plaintiff must provide a screen door suitable to the "rabbet" of the

door as he found it. One witness says he should have complained to the contractor that the "rabbet" was too small and have it made larger. This suggestion hardly merits discussion. We can not charge the the screen contractor with responsibility for size of the rabbet. His business under his contract was to make screens to fit the rabbet as established by the contractor.

Moreover. the buildings were of cheap construction and plaintiff asked to make his bid as cheap as possible. It therefore appears that the contractor established his rabbet to accommodate the cheap screens. Besides, the owner, who is claimed to have rejected the screens, did not testify by commission or otherwise. The screens, some four years after they were installed when the case was tried below, were still in the cottages and we surmise are still there, as there is no pretention that they were removed.

We are of the opinion that the plaintiff should recover.

The owner by a supplemental answer asks that he be given judgment against the surety for such sum as he may be condemned to pay plaintiff by reason of his failure to record his contract and bond. In this connection it was at first argued that the bond had not been offered in evidence and that no judgment could be based thereon. But we find that it is admitted that a bond was given as set forth in the· petition.

For the reasons assigned the judgment appealed from is reversed and it is now ordered that there be judgment in favor of plaintiff and against the defendants Sam Stone and Son, Sam Stone and John C. Stone and Henry G. Bulkley in the full sum of $426.69 with interest thereon from, March 1, 1918, and all costs, in solido; that the writ of attachment sued out against Henry G. Bulkley be maintained and plaintiff's lien and privilege on the property seized be recognized and that the property attached be sold and petitioner's claim be paid with preference and priority over all others out of the proceeds.

It is further ordered that Henry G. Bulkley have judgment against the Globe Indemnity Company for the sum of $426.69 with interest and costs in such amount as he may be required to pay under this judgment.